**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANITRA CHATMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BASK & LATHER CO.,<br><br>Defendant. | Civil Action No. 26-cv-6741<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Anitra Chapman brings this action on behalf of herself, and all others similarly situated, and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through his attorneys, as follows:

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant Bask & Lather Co., (referenced herein as "Bask & Lather" or "B&L") arising from its deceptive addition of junk fees to consumers' shopping carts.

2. When consumers browsed products on the B&L website during the relevant time period, B&L advertised the price of its retail items, along with an advertisement for either free or paid shipping dependent on the dollar value of items purchased. Those pricing representations are false, however, because B&L surreptitiously added junk fees to consumer purchases on top of the free or paid shipping in the form of a so-called "Premium Shipping Protection" (also referenced herein as the "PSP Fees").

3. As discussed in detail herein, the assessment of these PSP fees is deceptive and unfair, since: (a) B&L automatically added these fees into consumers' shopping carts; (b) the fees

are nothing more than an additional empty cost for shipping, rendering retailer representations of actual paid shipping charges false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiff, who would not knowingly choose to pay them, absent Defendant's deception.

4. Thousands of e-commerce customers like Plaintiff have been assessed hidden shipping charges for which they did not bargain due to B&L's deceptive tactics.

5. By unfairly obscuring its true shipping costs, Defendant deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do not assess such a fee.

6. Plaintiff seeks damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay shipping costs.

## PARTIES

7. Plaintiff Anitra Chatman is a citizen and resident of Lake Elsinore, California.

8. Defendant B&L is headquartered in Yonkers, New York.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

a. the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B);

b. at least one member of the proposed class is a citizen of a State other than New York, § 1332(d)(2)(A); and

c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. B&L Surreptitiously Added Fees to Consumers' Carts

11. Upon information and belief, here's how B&L's deception worked. When a consumer viewed an item on the B&L website among several other products for purchase, the consumer was shown the prices of the items being considered for purchase.

12. When the consumer selected an item for additional information about the product on the B&L website, the consumer would be presented with options to purchase the single item or purchase additional products at a "volume discount" as well initiate a recurring subscription that similarly offered additional savings.

13. When a consumer added the single item to their online shopping cart on the B&L website, the consumer would see the selected merchandise and corresponding price as viewed on the previous page with a disclosure that "Taxes, discounts and shipping calculated at checkout." The consumer was then directed to checkout.

14. Once the customer proceeded to checkout phase to purchase the selected merchandise under the prominent default option, the customer was prompted to enter a shipping address for delivery and any applicable shipping fees.

15. Upon information and belief, during the checkout process, B&L automatically and surreptitiously opted users into purchasing PSP Fees without affirmative consent. This method of adding on PSP Fees was designed to go undetected by consumers and thus provide additional

revenue to B&L.

16. If the consumer failed to *opt out* of the PSP Fee, any applicable shipping fee applies with the PSP fee is foisted on top of the actual shipping fee.

17. At the time Plaintiff and the putative Class members made their purchases, the B&L PSP Fee was engineered to be a default addition to the consumer's cart. The opt-out option is intentionally designed to be presented as subtle go unnoticed by consumers, and engineered to force consumers to affirmatively opt-out of the junk fee in order to avoid it.

18. Thus, if consumers even notice a fee added to their transactions, consumers must still proactively remove the junk fee from their shopping cart.

19. This pre-selection and automatic opting in of consumers to junk fees is itself deceptive.

20. As the FTC notes, "For years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers). The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf Fn. 46 at pg. 13 (emphasis added).

## III. The Add On Fees Render Promises of Transparent Shipping Costs False

21. Even beyond the deceptive manner in which the fees are added, the fees themselves are additionally deceptive because they directly contradict other promises on the B&L website concerning paid shipping. That is because B&L's add-on fees are, in actuality, a disguised shipping charge.

22. Whatever the PSP Fee is for—and as described herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers and any returns or exchanges that a consumer may undertake.

23. But as described herein, B&L promised pre-paid shipping as was disclosed herein. These were clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—was represented by the known pre-paid shipping promise.

24. However, Defendant decided it could actually charge more for shipping, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

25. Defendant was or should have been aware that consumers were and would be deceived by an embedded shipping fee at the same time as a promise of pre-paid shipping was being made.

26. Because it is well known that consumers prefer free or up-front and transparently clear shipping costs, Defendant made an intentional decision to break shipping costs into two parts and thus disguise its decision to charge more for shipping through deceptive add-on PSP Fees.

27. The deceptively added PSP Fee is a hidden shipping fee. This renders false B&L's representation of a fully disclosed shipping fee.

28. By unfairly obscuring its charges to consumers, Defendant deceives consumers and gains an unfair upper hand on competitors.

29. In addition to the manner in which the fees are added and the fact that the added fees render other disclosed shipping fee promises false and deceptive, Defendant's fees are nonsense fees that provide little or no value to consumers.

## IV. Defendant's "PSP Fee" Is Inaccurately Named and Described and Provides No Added Value to Consumers

30. Even beyond the deceptive manner in which the fees are added and the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding clearly disclosed flat rate shipping costs, the PSP Fees are also deceptively named and described.

31. Popular shipping services like UPS, Federal Express, USPS Priority Mail *automatically* include insurance for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Defendant misrepresents, and omits material facts about, that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product less than $100—the PSP Fee is entirely worthless, because they are already provided the same protection by the shippers.

32. Additionally, in the event goods are not delivered, stolen or damaged, consumers, can report the issue to their credit card company or bank, who will often reverse the charge.

33. For all these reasons, the PSP Fee is deceptively named and described.

34. Even beyond the deceptive manner in which the fees are added, the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding flat-rate or properly disclosed shipping fees, and the fact that the PSP Fees are deceptively named and described, they also provide virtually no additional value to consumers. No reasonable consumer would knowingly elect to pay for the PSP Fee because it provides essentially zero additional value to consumers.

35. As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS and FedEx already provide some insurance coverage; and lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee serves no purpose.

## V. Defendant's Fees are Junk Fees and Violate Federal Guidance and California Law

36. Even worse, on information and belief, B&L only pays the shipping insurance entity a percentage of the PSP fee that B&L customers pay. The other portion is retained by B&L as pure profit.

37. Defendant's shipping fees, such as the PSP Fee, are precisely the type of "Junk Fee" that have come under government scrutiny in recent years:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

38. Just recently, the FTC secured a $35 million settlement with the travel app Hopper Inc. over pre-selected optional fees that were hidden from consumers using the app. Travel App Hopper to Pay $35 Million to Settle FTC Allegations It Charged Fees Without Consent and Deceived Users About Fees and Benefits of Some Products, July 2, 2026, https://www.ftc.gov/news-events/news/press-releases/2026/07/travel-app-hopper-pay-35-million-settle-ftc-allegations-it-charged-fees-without-consent-deceived.

39. Pointedly, the FTC noted that not only were the "optional" pre-selected fees hidden from Hopper customers, but "…that if Hopper adequately disclosed these fees and made them unselected by default, most consumers would decline them." *Id*.

40. In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") amending it to make "drip pricing," illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." See California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

41. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures in Digital Advertising at ii, 14 (Mar. 2013), available at

https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf

42. Defendant violates federal guidance and California law by adding the shipping fees as line items well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

43. Defendant's conduct also violates the federal Restore Online Shopper's Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401–8405. Specifically, Defendants used "'negative option'" sales [that] took advantage of consumers' expectations." *Id.*, § 8401(8). Moreover, Defendant violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.*, § 8403(1), (2).

## VII. Plaintiff's Experience

44. On or about May 1, 2024, Plaintiff purchased goods from the B&L website.

45. However, her purchase included a $.98 charge for a PSP Fee that was automatically and surreptitiously incorporated into her shipping fee, that—for the reasons described above—in fact represented an additional shipping charge.

46. Plaintiff did not know the charge existed or could be removed prior to her purchase.

47. Plaintiff would not have purchased PSP if she knew it was optional.

## CLASS ALLEGATIONS

48. Plaintiff brings this action on behalf of herself, and all other similarly situated persons. The proposed nationwide class ("Nationwide Class") is defined as:

> All consumers in the United States who, during the applicable statute of limitations, paid a PSP Fee or similar fee to Defendant.

> Plaintiff also brings this action on behalf of a California subclass ("California Subclass") defined as follows:

> All California consumers who, during the applicable statute of limitations, paid a PSP Fee or similar fee to Defendant.

Collectively, the Nationwide Class and California Subclass are referred to herein as the "Class".

49. Excluded from the Class are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

50. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

51. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other business records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

52. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over

questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

b. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

c. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

d. Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

e. Whether Defendant was unjustly enriched;

f. Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

g. Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

53. Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein.

54. Plaintiff is a more than adequate representative of the Class in that Plaintiff is Defendant's customer and has suffered damages as a result of Defendant's misrepresentations. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in

the prosecution of consumer class actions;

b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

55. Common questions of fact or law concerning B&L's liability to all class members for charging shipping protection fees on transactions that didn't give class members any appreciable benefit would predominate over any questions affecting only individual class members. Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual class members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

56. Plaintiff hereby incorporates by reference the preceding paragraphs.

57. Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

58. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose

is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

59. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

60. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

61. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

62. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

63. Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly (a) sneaking fees into consumers' carts; (b) deceptively naming and describing the fees; (c) charging fees that are in actuality simply the price involved in the shipping process; and (d) charging fees that provide no added value to reasonable consumers, like Plaintiff, who would not knowingly choose to pay them, absent Defendant's deception.

64. Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

65. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

66. Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*as more thoroughly described below.

67. B&L's conduct also constitutes an "unlawful" act under the UCL because it constitutes a violation of the Restore Online Shopper's Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401–8405. Specifically, B&L used "'negative option'" sales [that] took advantage of consumers' expectations." *Id.*, § 8401(8). Moreover, B&L violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.*, § 8403(1), (2).

68. Defendant's business practices have misled Plaintiff and the proposed Class and, unless enjoined, will continue to mislead them in the future.

69. Plaintiff relied on Defendant's misrepresentations in making his purchase. Specifically, Defendant (a) deceptively added fees into consumers' carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiff and Class members for shipping above and beyond what was promised to them; and (d) charged fees that provide no added value to consumers and reasonable consumers, like Plaintiff, would not knowingly choose to pay them, absent Defendant's deception.

70. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

71. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

72. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair, unlawful, and fraudulent practices.

73. Plaintiff has no adequate remedy at law in part because Defendant continues to automatically add fees to all purchases. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

## SECOND CLAIM FOR RELIEF
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

74. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully restated here.

75. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state,

in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

76. Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

77. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

78. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Classes, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its deceptive practices.

79. Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

80. Additionally, Plaintiff and Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(On Behalf of Plaintiff and the California Subclass)**

81. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

82. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of merchandise and shipping insurance to consumers were "transactions" within the meaning of California Civil

Code § 1761(e). The goods purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

83. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Classes which were intended to result in, and did result in, the sale of merchandise:

a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14)

e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

f. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

84. Specifically, Defendant (a) deceptively added fees into consumers' carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiff and Class members for shipping above and beyond what was promised and already provided to them; and (d) charged fees that provide no added value to consumers and reasonable consumers, like Plaintiff, would not knowingly choose to pay them, absent Defendant's deception.

85. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

86. Plaintiff also seeks public injunctive relief, as described above.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

87. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

88. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

89. Plaintiff and the Class conferred a benefit on Defendant.

90. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

91. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

92. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class demands a jury trial on all claims so triable and judgment as follows:

(a) Certifying the proposed Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as class counsel for the proposed Class;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest at the maximum rate permitted by applicable law; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: August 6, 2026

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
(212) 643-0500
*mreese@reesellp.com*

**KALIELGOLD PLLC**
Jeffrey D. Kaliel
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*

**KALIELGOLD PLLC**
Sophia Goren Gold
Amanda Rosenberg
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783
*sgold@kalielgold.com*
*arosenberg@kalielgold.com*

*Counsel for Plaintiff and the Putative Classes*